86 421
98 209

## Richmond.

PATTON v. LEFTWICH & ALS.

DECEMBER 12th, 1889.

SURVIVING PARTNERS—*Powers—Assignments.*—Upon death of one member of an insolvent firm the survivors may make a valid general assignment of the firm assets for benefit of the firm creditors and give preferences.

Appeal from decree of circuit court of Bedford county, rendered December 9, 1887, in a cause wherein J. D. Patton was complainant and R. M. Leftwich and W. H. Stiff, surviving partners of themselves, and R. F. Robertson, deceased, doing business in the name of R. F. Robertson & Co., and the Liberty Savings Bank and others, were defendants. The decree being against the complainant, he appealed. Opinion states the case.

*John W. Daniel* and *McKenny & Berry*, for the appellant.

*E. C. Burks* and *R. H. G. Kean*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

R. F. Robertson, R. M. Leftwich, and W. H. Stiff, early in the year 1885, entered into partnership under the firm name of R. F. Robertson & Co. in the town of Liberty, Bedford county, Virginia, for the manufacture and sale of chewing and smoking tobacco, &c. In October, 1885, R. F. Robertson died, and the said partnership was dissolved, *ipso facto*, by his death,

by operation of law. Said Robertson died intestate and insolvent, and his estate was committed to the sheriff of Bedford county as administrator *de bonis non*, after the revocation of the powers of his father, F. W. Robertson, as administrator.

The partnership assets, at the date of dissolution by the death of the partner, R. F. Robertson, consisted of a large number and amount of debts due to the said firm, and also a large quantity of unmanufactured tobacco, manufactured tobacco, and machinery and furniture used in the business—all personalty; no realty.

The surviving partners, Leftwich and Stiff, began to wind up the partnership affairs; but finding, in the course of liquidation, that the partnership liabilities were greater than the assets would pay, the said Leftwich and Stiff, as said surviving partners, on the 6th of February, 1886, made an assignment to P. L. Saunders, trustee, of all the partnership assets of the late firm of R. F. Robertson & Co. in trust, to pay, first, two negotiable notes of the said firm held by the Liberty Savings Bank, one for $2,500, payable to and endorsed by McGhee & Hurt, dated ——, and the other for $2,000, payable to and endorsed by McGhee, Hurt & Co., dated ——. Second—To pay two other negotiable notes of said firm held by the said Liberty Savings Bank, one for $2,000, payable to and endorsed by Wesley Peters, dated ——, and the other for $1,000, payable to and endorsed by Jeter & Newsom, dated——. Third—To pay all other indebtedness due the said Liberty Savings Bank by the said late firm; and, lastly, to distribute the surplus, if any.

On the 9th of December, 1887, James D. Patton, a creditor of the late firm, instituted this suit—a creditor's suit—in the circuit court of Bedford county, against the said Leftwich and the said Stiff, surviving partners, Saunders, trustee, the Liberty Savings Bank, and the administrator of R. F. Robertson, deceased. With his said bill, J. D. Patton filed a copy of the said assignment and schedule, and exhibits, the evidences of

the indebtedness of the insolvent firm to him. He does not waive answers on oath. The Liberty Savings Bank filed its answer by its president. The trustee, Saunders, filed his answer on oath, and Leftwich and Stiff filed their answer on oath.

The complainant, Patton, charges in his bill that the said surviving partners, Leftwich and Stiff, had no rightful power or authority in law to make an assignment of the assets of an insolvent firm, which had been dissolved by the death of a partner; nor to give preference to the bank, or to any one or more of the creditors of the firm, over the other creditors of the firm, of equal dignity. And the prayer of the bill is, that the assignment of Leftwich and Stiff of February 6th, 1886, as surviving partners of the late firm of R. F. Robertson & Co. be annulled and set aside, and that accounts be ordered and taken of the partnership assets in the hands of the trustee and assignee, and of all other social assets, if any, not included in the said assignment; of the debts due by the said late partnership; of the notes discounted and held by the Liberty Savings Bank, and of the application made of the proceeds of said discounts; and of the individual property of R. F. Robertson, deceased, and of Leftwich and of Stiff.

On the 9th of December, 1887, the circuit court of Bedford county, by its final decree, simply dismissed the bill, with costs to the defendants. From this decree Patton obtained this appeal.

The bill charges fraud, and collusion of fraud; but the answers are fully and explicitly responsive, and they deny the allegations and specifications of fraud made in the bill, and there is no proof whatever, or even an attempt to prove the fraud charged. Indeed the petition for appeal and the briefs of counsel for appellant do not present the question of fraud. There is no dispute as to the facts in the case. The question presented for adjudication, and the one on which the case turns, is purely and simply one of law, as to the powers and

duties of surviving partners of an insolvent firm dissolved by death, and the counsel for appellant, in their brief, state the question thus: "Whether the surviving partners of an insolvent firm can make a valid assignment to a trustee of all the effects of the partnership, preferring one, and postponing all others of the social creditors?" The appellant contends that all the social creditors, of same dignity, must be paid ratably; that by the death of the partner Robertson, the surviving partners, Leftwich and Stiff, became, by operation of law, trustees of the partnership property, which, as such trustees, they were bound to apply, ratably, to the payment of the partnership debts; and that they had no lawful power or capacity to discriminate among the social creditors so as to give preference, either in payment or security by assignment; and that, in this case, the assets being insufficient to pay or secure all, and the partners being insolvent, it was a breach of trust in the surviving partners, Leftwich and Stiff, to make the assignment of February 6th, 1886, which, in equity, is void as to the social creditors who are postponed by the said assignment.

The question submitted is one of very great importance, affecting large interests and rights in the commercial world; and yet it has never, it is believed, been presented before this court in this definite form. But the supreme court of the United States has adjudicated the precise question and the exact point at issue here. (*Fitzpatrick* v. *Flannagan*, 106 U. S., 654; *Emerson* v. *Senter*, 118 U. S., 3.) In this last-mentioned case the supreme court of the United States says: "As, with the concurrence of all the partners, the joint property could have been sold or assigned, for the benefit of the preferred creditors of the firm, the surviving partner (there being no statute forbidding it) could make the same disposition of it. The right to do so grows out of his duty, from his relation to the property, to administer the affairs of the firm so as to close up its business without unreasonable delay; and his authority to make such a preference—the local law not forbidding it—

cannot, upon principle, be less than that which an individual debtor has in the case of his own creditors." And the language of the syllabus of the case is: "The surviving partners of an insolvent firm, who are themselves insolvent, may make a general assignment of all the firm's assets, for the benefit of all joint creditors, with preferences to some of them; and such assignment is not invalidated by the fact that the assignors fraudulently withheld from the schedule certain partnership property for their own benefit, without the knowledge of the assignee or the beneficiaries of the trust." (See *Egberts* v. *Wood,* 7 Paige, re-reported in 24 Amer. Dec., 236 and note; *Hutchinson* v. *Smith,* 7 Paige, 26; *Wilson* v. *Soper,* 13 B. Monroe, 411, re-reported 56 Amer. Dec., 573 and note; *Loeshigh* v. *Hatfield,* 51 N. Y., 660; *Cushman* v. *Addison,* 52 N. Y., 628; *Williams* v. *Wheadon,* 109 N. Y., 333, decided in 1888 and re-reported in 4 Amer. St. Rep., 460; *French* v. *Lovejoy,* 12 N. H., 65 Amer. Dec., note 295–303; *Barry* v. *Briggs,* 22 Mich., 201. In the very recent case of *Williams* v. *Wheadon, supra,* the New York court of appeals reviews many prior cases, and refers to *Emerson* v. *Senter* as conclusive. In the case of *French* v. *Lovejoy, supra,* the court of appeals of New Hampshire says, p. 459: "the property of the partnership might be lawfully appropriated to the payment of the partnership debts; and F. Lovejoy, as surviving partner, had the right to prefer A. Lovejoy, a creditor of the firm, in that way." In *Barry* v. *Briggs, supra,* Chief Justice Campbell, speaking for the Michigan court, says: "A sole surviving partner has the entire legal title to all the partnership assets. He has a right, acting honestly and with reasonable discretion and diligence, to dispose of them as he pleases, to settle all debts against the concern, to make any compromise he may deem necessary, and to turn the assets into an available and distributable form."

Bates on partnership, 2 vol., sec. 732, says: "As the surviving partner has the entire title and sole control of the property, and represents the power of all the former partners, and

they all could have assigned the property for the benefit of creditors, so the surviving partner has, at least in the case of insolvency, in order to wind up, the same power, and can transfer the property to an assignee for the benefit, not of his separate creditors, but of the partnership creditors. * * * And as he (the surviving partner) can pay some creditors in full, to the prejudice of others, so it has been held that, if the local law does not forbid, in case of other assignments for creditors, he can assign with preferences." And for this last proposition the author cites, among others, the case of *Emerson* v. *Senter.*

The cases of *Fitzpatrick* v. *Flannagan,* 106 U. S., 648, and *Case* v. *Beauregard,* 99 U. S., 119, are cited in the recent case decided by this court of *Robinson* v. *Allen,* 85 Va., 721. See the case of *Beste* v. *Berger,* 17 N. E. Rep., 734.

Even real estate, bought with partnership funds, the title of which is taken in the name of the deceased partner, is so completely in the control of the surviving partner, that where he assigned to a trustee, and the trustee sold, the purchaser of this equitable title can, in equity, compel the heirs of the deceased partner to convey the legal title to him. (*Shanks* v. *Kline,* 104 U. S., 18.)

The cases referred to in the brief of counsel for appellant, *Salisbury* v. *Ellison,* 7 Colorado, and *Anderson* v. *Norton,* 15 Lea, (Tenn.), are rested on the ground, that the surviving partner is a trustee for the benefit of the firm's creditors, and is governed by the rules applying to ordinary trustees; and that, as in the cases of ordinary trustees, " equality is equity." The surviving partners being trustees, cannot give any preference among the creditors. But surviving partners are not trustees, in the ordinary sense, though they are loosely so called by some judges and law writers. Lord Chancellor Westbury, in *Knox* v. *Rye,* L. R., 5 H. L., 656 and 675, cited 2 Pomeroy, p. 618, note 2, says, that the trust of a surviving partner is limited by the extent of his obligation; and that it is most important to mark this, again and again, for there is not a

more fruitful source of error in law than the inaccuracy of language. The application to a man, who is, improperly and by metaphor only, called a trustee, of all the consequences which would follow if he were a trustee by express declaration; in other words, a complete trustee holding the property exclusively for the benefit of the *cestui que trust*, well illustrates the remark of Lord Macclesfield, that nothing in law is so apt to mislead, as "metaphor." But, conceding that a surviving partner is a trustee in a general sense, what is the extent of his trust? Certainly not beyond his obligation. *First*, to collect all the assets of the firm; *second*, to apply them to the firm's debts; *third*, to distribute the surplus, if any, among the surviving partners and the representatives of those who are dead. This is the full extent and duty of his trust, such as it is. In paying the debts of the firm there is no limitation or restriction on his power to pay one social creditor, or to secure one, in preference to another, if he act honestly. In this regard he has the same right and power that any other debtor has. The representative of the deceased partner is not injured by a preference given to one firm's creditor over another; and it is quite immaterial to him, if the assets of the firm being insufficient to pay all the social creditors, whether they be applied ratably to all the debts, or be applied to some to the exclusion of the others. The burden upon the estate of the decedents is precisely the same in either event. The creditor has no other equity than the partners have *inter se,* and the whole extent of a partner's equity is, that the partnership assets shall be applied to the payment of the partnership debts to the exclusion of the separate debts of the several partners; but this right or equity does not extend or operate to the prevention of giving preference among partnership creditors. The case of *Offutt* v. *Scott,* 47 Ala., 104, cited in the petition for appeal, is not in conflict with this principle. Nor is the Virginia case of *Lindsay* v. *Corkery,* 29 Gratt. In that case each of the partners had gone

into bankruptcy, and it was, among other things, held, that, by the bankruptcy, the going into bankruptcy of the several partners the social assets stood appropriated to all the social creditors alike, and the rule of administration of the assets, thus appropriated, was the same, whether the bankrupt assets were administered in the bankrupt court, or in a court of equity. The lien or equitable right, existing among the partners, by, through and under which the social creditors may only claim, extends no further than to require the social assets to be applied to the social debts; and, until they are paid, that the individual debts of the partners shall be excluded from participation in the social fund; but it does not prohibit preferences from being given in the payment, or securing the payment of partnership debts out of partnership property. In the absence of a statute to the contrary—(and there is none such in Virginia)—every debtor has the right to prefer one of his creditors to another; and the case of a surviving partner, who is a debtor as such, is no exception to the general rule.

We do not think it was error in the circuit court of Bedford county to dismiss the bill, when there was no proof of its allegations, nor to refuse to order the needless costs and delay of accounts, when the trustee had reported that the assets were all in hand and were insufficient to satisfy even the preferred debts.

The judgment of this court is, that the decree appealed from is right, and that it is affirmed.

Richardson, J., dissented.

Decree affirmed.