## American Bonding Company et al. *v.* State, ex rel. Whisler, Receiver.

[No. 6,089. Filed November 22, 1907.]

1. Trial.—*Special Findings.—Ultimate Facts.—Evidence.*—Special findings should show the ultimate facts and not merely the evidence thereof. p. 562.

2. Same.—*Special Findings.—Bonds.—Breaches. — Partnership.— Inventory.*—In an action by the receiver of a partnership, on the bond of the surviving partner, executed by herself and a surety, for the recovery of money alleged to have been converted by such surviving partner, special findings that her inventory and appraisement showed the partnership assets to be of a certain value, and that she had collected thereof a certain less sum do not show that she is chargeable with such appraised value of the assets. p. 562.

3. Same.—*Special Findings.—Bonds.—Breaches.—Conversion.*—In an action on the bond of a surviving partner, for a breach thereof

by conversion, the special findings should show definitely the amount for which such surviving partner was chargeable, and the amounts paid out on behalf of such partnership, leaving nothing to mere inference or conjecture. p. 562.

4. TRIAL.—*Special Findings.—Joint Ownership.—Several Interests.* —A special finding that two persons owned certain bank stock is too indefinite to found a conclusion upon that they were equal owners thereof. p. 563.

5. PARTNERSHIP.—*Surviving Partner.—Insolvency.—Advancements.* —*Settlement.*—Where the individuals composing a partnership are insolvent, and the surviving partner uses her individual funds to extinguish partnership debts, such surviving partner is entitled to credit for, and to a retention of, such amounts in the partnership settlement. pp. 564, 568.

6. SAME.—*Partners.—Insolvency.*—Individual creditors of insolvent partners have priority, over firm creditors, to the individual property of such partners. p. 565.

7. SAME.—*Surviving Partners.—Duties.—Preferences. — Bonds. — Breaches.*—A surviving partner may lawfully prefer one or more of the partnership creditors in the settlement of the firm's business; and she does not violate the conditions of her bond, guaranteeing the performance of her duty, when she honestly pays out to *bona fide* creditors all of the money received. p. 565.

8. SAME.—*Surviving Partners.—Trusts.—Statutes.*—Surviving partners are not trustees in the ordinary sense, since they have possession and control by virtue of their ownership; and our statutes providing for the winding up of partnerships by surviving partners are in limitation of the ordinary powers possessed by such survivors. p. 567.

9. TRUSTS.—*Trustees.—Use of Private Funds.—Reimbursement.*—A trustee who uses her private funds for the use of her trust estate, is entitled to be reimbursed therefor from such estate. p. 567.

From Wabash Circuit Court; *U. S. Lesh,* Special Judge.

Action by the State of Indiana, on relation of David Whisler, as receiver of the partnership of Lawrence & Company, against the Amercian Bonding Company, and another. From a judgment for plaintiff, defendants appeal. *Reversed.*

*Ayres, Jones & Hollett* and *J. Clyde Hoffman,* for appellants.

*Shively & Switzer* and *Warren G. Sayre,* for appellee.

HADLEY, J.—This was an action brought by the State, on the relation of David Whisler, receiver of the late copartnership of Lawrence & Company, against appellants, Elizabeth H. Mills and the American Bonding Company of Baltimore, for recovery upon a bond executed by said Elizabeth H. Mills, surviving partner of the firm of Lawrence & Company, as principal, and said American Bonding Company of Baltimore, as surety, for alleged breaches thereof. Upon issue joined, the cause was submitted to the court, and, upon request, special findings and conclusions of law were made, upon which judgment was rendered for appellee.

Exceptions were reserved by each of said appellants to each of said conclusions of law. Each of said appellants then filed separate motions for a *venire de novo* and for a new trial. It is contended that the motions for a *venire de novo* should have been sustained, for the reason that the special findings are imperfect, indefinite, and uncertain, in that the court did not find the amount of funds of said trust with which appellant Mills should be charged. Item two of the findings shows that on April 9, 1901, she filed an inventory and appraisement of the partnership assets stating that "said appraisement showed the firm assets to be as follows:

| | |
|---|---|
| The stock of merchandise appraised at | $13,823.05 |
| Accounts classed as good | 2,366.98 |
| Accounts classed as doubtful | 498.92 |
| Accounts classed as bad | 194.61 |
| Making a total of | $16,883.56" |

This is the only finding as to the value of the property or what she received out of the trust, except that item four finds that up to February 15, 1902, appellant Mills had collected of the choses in action $787.35.

It is well settled that it is the province of special findings to find the ultimate facts, and the finding of evidentiary

VOL. 40—36

facts is not sufficient. *Minnich* v. *Darling* (1894), 8 Ind. App. 539, 542; *Taylor* v. *Canaday* (1901), 155 Ind. 675; *Perkins* v. *Hayward* (1890), 124 Ind. 445. The finding that the appraisement showed certain things is not a finding of an ultimate fact, but of an evidentiary fact (*Hasselman* v. *Japanese Develop. Co.* [1891], 2 Ind. App. 180); nor is it a finding that appellant Mills received that amount of property; nor, in view of the other findings, necessarily a finding that she should be charged with that amount. It is true, as counsel for appellee state, that as a general rule a trustee is charged with the amount of the inventory and appraisement filed in the trust. But when, as in this case, the suit is for a breach of the bond, and the other findings of the court show that the trustee was not so charged in making calculation to determine the amount converted, the rule fails, and there should be a definite finding somewhere of the amount of the partnership property received and with which the trustee should be charged. The court found that appellant Mills collected $787.35 of the choses in action prior to February 15, 1902, but does not find that this was the whole amount she collected or with which she should be charged. The court also found that she had expended in the performance of her trust the sum of $3,486.28, and that she had paid on the debts of the partnership, out of the partnership's property, $3,855.25; that she paid on partnership debts $596.90 out of an equity in lands she owned, $828.71 out of other lands owned by Jennie C. Lawrence and Elizabeth H. Mills jointly, $17,366.62 out of the proceeds of the sale of bank-stock owned by said Lawrence and Mills in their separate capacities, and pledged as security for said debts, and $652.71 on another partnership debt out of the same proceeds; that she expended $800 to replenish stock; that the services of August C. Mills rendered said trust was of the value of $1,500, and that she converted to her own use of the trust funds, $6,257.52. How

did the court arrive at this amount? .It is urged that this
amount is excessive. How is this court to determine that
fact? With which of the above amounts did the court credit
her? Certainly not all; and we cannot discover any com-
bination of the above amounts, together with the amount
found to have been converted, that will come anywhere near
to the amount of the appraisement. Counsel for appellee
have endeavored to aid us in this search, by suggesting that
the court in its calculation deducted from the amount of
her appraisement the amount of $2,273.16, the difference
between the appraised amount of the choses in action and
the amount of the same found to. have been collected prior
to February 15, 1902, and taking the balance of the ap-
praisement left after this deduction as the amount with
which she should be charged, and grouping together cer-
tain of the above amounts as credits, thus obtained the re-
sult found. But there is no finding that such a deduction
should be made, and, to obtain the basis, we must go into
the field of speculation and indulge in inferences. This,
under the well-settled rules of law, we cannot do. *Crowder*
v. *Riggs* (1899), 153 Ind. 158; *Craig* v. *Bennett* (1897), 146
Ind. 574, and cases cited.

Item ten of the finding is, in substance, as follows: That
prior to the death of said Jennie C. Lawrence the partner-
ship of Lawrence & Company became indebted to
the Lawrence National Bank and to Susan H. Eagle
in various sums, which, when paid, amounted to $17,-
366.62; that when said loans were made by said bank and
said Susan H. Eagle there was pledged by said Jennie C.
Lawrence and said Elizabeth H. Mills certain bank-stock
then held and owned by them in their individual capacities
as collateral security for said loans; that in August, 1902,
said bank-stock so pledged with the knowledge and consent
of said Elizabeth H. Mills was sold by said creditors for
$18,150; that the money thus received was applied to the
payment of the debts so secured in the sum first-above

stated, and in the payment of another partnership debt of $652.71, the residue being paid to Elizabeth H. Mills. This item is indefinite and uncertain, in that it does not find in what amount each of said partners held the bank-stock in question. Counsel for appellant contend that the finding that the two partners owned and held certain pledged bank-stock in their individual capacities creates of necessity the presumption that they owned it jointly and equally. While it might be true that as to such a finding with regard to a single article of property that is indivisible—such as a house, a share of stock or the like—this presumption would arise; yet when this language is applied to an aggregation of property, such as a large number of shares of stock, such a presumption does not necessarily follow. For the foregoing reasons, the special findings must be held insufficient to support the judgment. While this determines the case so far as this appeal is concerned, there is a question 5. presented that will necessarily arise on another trial and should be settled at this hearing. It appears that in the performance of her trust as surviving partner appellant Mills used certain of the trust funds in her private affairs and out of her private funds paid partnership debts, and appellants insist that she should have credit for the partnership debts thus paid. Appellee contends that, since the partnership debts were also her individual obligation, when paid they were extinguished; that, since a partner cannot be a creditor of his own partnership, he cannot be subrogated to the rights of a creditor whose debt he had paid; and therefore appellant Mills was not entitled to reimburse herself out of the partnership fund, and should not be allowed credit for the amount of the partnership debts so paid out of her private funds. If the surviving partner was making this claim for her own benefit, in a controversy between herself and the firm creditors, there might be some virtue in this contention; but here the court found that appellant Mills, as well as the estate of Jennie C. Lawrence

and the firm of Lawrence & Company, was at all times after the death of Jennie C. Lawrence insolvent. Therefore the partnership creditors had no right or claim in or to the individual property of the partners. *Huff* v. *Lutz* (1882), 87 Ind. 471; *Weyer* v. *Thornburgh* (1860), 15 Ind. 124.

The suit is not one wherein the surviving partner is claiming a benefit for herself, but is a suit upon the bond for a breach thereof, the alleged breach being that the principal received assets of the partnership for which she failed to account. There is no question of maladministration or fraud, and, as we view the law on the facts in this case, there can be no question of misapplication of funds, since it is not claimed that any of the debts paid by the surviving partner were not *bona fide* debts of the partnership. The condition of the bond of appellant bonding company, so far as it related to the question, was that the principal should "discharge all and singular her duties as surviving partner, * * * and fully account to the proper authority for all money or other property with which she may be justly chargeable as surviving partner." Her duties as surviving partner were to reduce the assets to money and apply the same, less expenses, on the partnership debts, and pay the surplus, if any, to the estate of decedent. In the payment of these debts she was as free to choose when and whom she would pay as an individual or existing partnership would be. She could assign all the property for the benefit of all the creditors. *Winslow* v. *Wallace* (1888), 116 Ind. 317; *Patton* v. *Leftwich* (1889), 86 Va. 421, 6 L. R. A. 569; *State* v. *Matthews* (1891), 129 Ind. 281; *First Nat. Bank* v. *Parsons* (1891), 128 Ind. 147. She could prefer any creditor she chose. *Havens & Geddes Co.* v. *Harris* (1895), 140 Ind. 387; *Emerson* v. *Senter* (1886), 118 U. S. 3, 30 L. Ed. 49, 6 Sup. Ct. 981. She could turn all of the assets over to one creditor, if the debt of such creditor equalled or exceeded the amount of such

assets, to the exclusion of all other creditors.  *Courtland Forging Co.* v. *First Nat. Bank* (1895), 141 Ind. 518.

All that the creditors of the partnership or the estate of the deceased partner could ask was an honest application of the amount received to the *bona fide* debt or debts of the partnership, and this is all the bond guarantees.  The bond does not guarantee the payment of all the debts of the partnership; neither does it guarantee the payment of the debt or debts of any particular person or persons, nor the payment of a ratable proportion of all the debts, nor that the identical money received should be so applied.  Suppose, in this case, it should be found that appellant Mills had actually received out of the trust estate $16,000, but that she had paid on the partnership debts and expenses of administration the sum of $16,000.  Wherein has she failed to the injury of the partnership creditors?  Surely the creditors cannot be said to have been harmed.  Is it material to the creditors if she took $6,000 of the money received from the sale of trust property and bought sugar, flour, clothing, etc., for herself, and took $6,000 of money received from the sale of her private property and paid on the partnership debts, instead of the reverse?  Is it more than a nominal breach of the bond, if breach at all, that she took money for her personal wants out of the right-hand drawer, which contained trust funds, and paid the same amount for the trust out of the left-hand drawer, which contained her personal funds?  The firm creditors are entitled to receive the amount of the proceeds of the partnership assets, and the bond guarantees that they shall do so.  The bond, however, does not agree to increase the amount of the assets. If, as in the supposed case, the surviving partner has received $16,000 of partnership funds and has paid out on partnership debts $16,000, and because she used $6,000 of the partnership funds for her own use and replaced it with $6,000 of her own funds, we should say the bond should be made to pay this sum, the creditors would then receive just

that much more than the assets of the partnership, and just that much more than they had a right to expect or were entitled to receive from the partnership.

We do not base our holding upon the principles of substitution or subrogation. In our view these principles are not necessarily involved. A surviving partner is not an ordinary trustee, as that term is generally understood. He does not have possession and dominion over the partnership assets by virtue of any statute or action of any court, but by reason of his own interest in the property and his rights and powers as a member of the firm. Our statutes do not confer any of these rights upon him, but are in limitation of his powers and protection of the funds arising from the partnership assets. A commingling of these funds with his individual funds is not a conversion, since he has an ownership in and control over them aside from the trust by virtue of his connection as partner. The conversion arises when he fails at the proper time honestly to account for them to the proper persons or authority; and until he so fails there can be no breach of the bond. These propositions are supported by *State* v. *Matthews, supra; First Nat. Bank* v. *Parsons, supra; Havens & Geddes Co.* v. *Harris, supra; Patton* v. *Leftwich, supra; Knox* v. *Gye* (1872), L. R. 5 H. L. 656; *Emerson* v. *Senter, supra.*

It is a settled rule that where a trustee uses his own money for the purposes of the trust, he is entitled to reimbursement. *Leach* v. *Prebster* (1871), 35 Ind. 415; *Skillen* v. *Jones* (1873), 44 Ind. 136; *Hancock* v. *Minot* (1829), 8 Pick. 29; *Livingston* v. *Newkirk* (1818), 3 Johns. Ch. 312, 318. In *Skillen* v. *Jones, supra,* appellant was acting in the dual capacity of surviving partner and executor of his deceased partner. On page 148 the court says: "The jury also found that the appellant was appointed executor on April 6, 1866, and continued to act until May 11, 1871; that, during that time, he paid debts against the estate to the amount of $2,626.29 exceeding the amount of

personal estate which came to his hands, leaving out whatever interest he had in the partnership business; and that no part of it had been allowed to him as such executor. That would be a proper item to be deducted from any amount for which he would be liable, on account of appropriating to himself the partnership effects. If he had paid debts against the estate out of his own means, he would have the right to reimburse himself out of funds which might thereafter come to his hands. Or he might take of the funds in his hands, as surviving partner, which on a final settlement and adjustment would belong to the estate of the deceased, and in his capacity of executor use it in payment of the debts against the estate, and having done so would be entitled to a credit for it.''

For the foregoing reasons it is our conclusion that where an insolvent surviving partner has applied private funds to the payment of partnership debts, said partner is

5. entitled to credit for the amount so paid in accounting for the assets of said partnership in an action on said partner's bond for a breach thereof by way of conversion. It is argued that under finding ten, before set out, appellant Mills should be allowed credit for the amount paid on the partnership debts, out of the sale of bank-stock, pledged to secure the same, by said appellant and Jennie C. Lawrence in her lifetime; but, as we have heretofore shown, this finding is too indefinite and uncertain as to the ownership of this stock to sustain a conclusion of law. So many supposable cases might be suggested under this finding in its present condition that we do not feel warranted in hazarding an opinion upon it. This and the other questions may not arise on another trial and we do not decide them. The case of *Lyons* v. *Murray* (1888), 95 Mo. 23, 6 Am. St. 17, cited by appellees as being of controlling force, is not analogous to this case. That was a suit in the nature of a creditor's bill by an individual judgment creditor of the surviving partner against a firm creditor to recover a fraudulent

overpayment by such surviving partner to said firm creditor, in order to sequester the property of such surviving partner in fraud of his individual creditors, and was an entirely different case from the one before us, and upon the facts of that case the conclusions stated are not in conflict with our conclusion here.

Judgment reversed, with instructions to sustain the motion of appellants for a *venire de novo.*